## KURTZ et al. v. FORD MOTOR CO. et al.
### No. 3749.

District Court, E. D. Michigan, S. D.
Aug. 20, 1945.

256

Walter M. Nelson, of Detroit, Mich., for plaintiffs.

I. Joseph Farley, of Detroit, Mich., for defendant Ford Motor Co.

George E. Brand, of Detroit, Mich., for defendant General Products Corporation.

LEDERLE, District Judge.

### Findings of Fact.

1. This action was instituted by Cyrus B. Kurtz, a citizen of the State of Ohio, against Ford Motor Company, a Delaware corporation, and General Products Corporation, a Michigan corporation, seeking damages in the amount of $85,000. Plaintiff's claim was predicated upon an oral contract allegedly made in Michigan in 1938 between plaintiff and both defendants for the payment of royalties on a gear-shift device allegedly produced by, and sold on automobiles of, the defendant Ford Motor Company, which device was fabricated in part by defendant General Products Corporation. Plaintiff's claim also included a demand for payment of money allegedly due for the settlement of obligations arising under a prior written license agreement between plaintiff and General Products Corporation.

The trial lasted five weeks and, at the close of plaintiff's case in chief, both defendants moved for a directed verdict of no cause for action, assigning a number of reasons therefor. However, these findings will be confined to the main features deemed necessary for a decision on these motions.

For brevity, defendant Ford Motor Company will be hereinafter referred to as "Ford" and defendant General Products Corporation will be referred to as "General." During the closing arguments of the trial, Cyrus B. Kurtz, Jr., a citizen of Ohio, was added as a party plaintiff because of a possible interest in his father's transactions in this connection. He was not present during the trial, but through his counsel adopted the pleadings of his father, the original plaintiff. For brevity, and in conformity with the manner in which the case was tried, Cyrus B. Kurtz, Sr. will be designated herein as "plaintiff."

2. Except for a few minutes' testimony by one of plaintiff's associates, the only evidence introduced was testimony of plaintiff, supplemented by a number of documentary and physical exhibits. Plaintiff's testimony as to the terms and conditions of the alleged oral contract failed to establish the terms of the contract with definiteness and certainty.

At the request of the court, plaintiff's counsel outlined the terms of this alleged oral contract as follows:

"The oral agreement was that Kurtz would (1) give up the accessory business (2) cancel the October 1st license to General Products Corporation and (3) give through General Products Corporation to Ford Motor Company an irrevocable non-

exclusive license covering gear shifter units, parts thereof and therefor and improvements therein under any and all inventions, patents and patent applications and inventions relating to gear shifter units, and (4) to continue servicing and demonstrating shifter devices as requested by defendants, and Ford Motor Company and General Products Corporation agreed (5) to pay Kurtz $1,000 per month until production began, estimating that period at six months, and (6) to pay Kurtz 3 cents per gear shifter unit on the first 400,000 and 1½ cents on each gear shifter unit above that figure in each year, and (7) Ford Motor Company to give General Products Corporation orders for parts which General was to fill."

3. In order to meet the defense of the Statute of Frauds, pleaded by both defendants, plaintiff attempted to show that the alleged oral agreement was fully executed by plaintiff and the benefit thereof received and adopted by both defendants. Plaintiff calculated the total amount due him was $53,907 and insisted that both defendants owed him this sum of money, claiming in effect that it made no difference whether or not either defendant manufactured any of the devices or if Ford installed the devices on the cars sold by it. In his opening statement, counsel for plaintiff stated: "Now, we do not know, and we will not be able to show you what happened as between the Ford Motor Company and the General Products Corporation, as to how they arrived at who should pay that. As far as we are concerned, both are liable. That is our claim; .that will be our proof."

4. The sum claimed was made up of $4,-000.00 as the balance claimed under section 4 of the alleged contract plus the balance under section 6, with interest on both items. In order to arrive at the number of gear shifter units involved, the total production of Ford from about September 1, 1939, to February 24, 1942, was used, less the cars that were sold to the United States Government.

5. On or about June 20, 1939, plaintiff and General joined in the execution of a written license to Ford on all patents, patent applications and inventions relating to gearshift units under which either plaintiff or General had the right to grant licenses as well as those under which they might thereafter have the right to grant licenses. This document reads in part as follows: "In consideration of the placing

with us of your purchase order No. H-40213 dated June 20, 1939 * * *." The purchase order referred to expressed in detail the terms agreed upon. There is no claim that Ford did not fully carry out this agreement and pay for the material purchased in accordance with its terms.

6. There is no evidence that General ever manufactured any of the complete units alleged to have been invented by plaintiff. There is evidence that General manufactured and sold to Ford some parts that could be used to assemble the Ford gear shifter. It is impossible to determine from the evidence in this case what portion of Ford's total production included the parts it purchased from General.

7. The alleged promise to pay plaintiff the sum of $1,000.00 per month was to continue up to the time that "production began." There is no evidence in the record as to the date when such production was started, and, if this question were submitted to the jury, the date to be fixed would have to be based upon conjecture and speculation.

8. There is no evidence that the Ford employee, who is alleged to have made the agreement, had authority to do so on behalf of Ford.

9. The component terms and conditions of the alleged oral agreement were entire, indivisible and non-severable.

10. The alleged oral agreement was one that by its terms was not to be performed within one year of the making thereof.

### Conclusions of Law.

1. This is a suit of a civil nature between citizens of different states where the matter in controversy, exclusive of interest and costs, exceeds $3,000, over which this court has jurisdiction. 28 U.S.C.A. § 41(1).

2. Where, as here, the integral terms of an oral contract can only be arrived at by an excursion into the realm of conjecture and speculation, the court should not submit to the jury the matter of delineation of such terms.

3. An executory agreement, promising, among other things, to grant perpetual licenses under present patents and possible future patents, compensable in part by royalty payments computed upon the extent of use of inventions covered thereby, is a promise which cannot be performed

258

within one year from the making thereof. Hand v. Osgood, 1895, 107 Mich. 55, 64 N. W. 867, 30 L.R.A. 379, 61 Am.St.Rep. 312; Radio Corporation of America v. Cable Radio Tube Corporation, 2 Cir., 1933, 66 F. F.2d 778, certiorari denied 290 U.S. 703, 54 S.Ct. 373, 78 L.Ed. 604; Sec. 380, Walker on Patents (Deller's Ed.)

4. In Michigan every agreement, contract or promise that, by its terms, is not to be performed within one year from the making thereof is void unless such agreement, contract or promise, or some note or memorandum thereof is in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized. M.S.A. § 26.922, Comp.Laws 1929, § 13417.

5. Where any integral part of an alleged contract, which is executory, is void under the Statute of Frauds for lack of a writing and the component terms of the alleged contract are entire, indivisible and non-severable, the whole alleged contract is unenforceable. Sec. 198, Restatement of Contracts.

6. It therefore follows that the defendants' motions for directed verdict of no cause for action must be granted.